CHASE ELECTRIC CONST. CO. v. COLUMBIA CONST. CO. et al.

(Circuit Court, E. D. Pennsylvania. March 31, 1906.)

No. 51.

PATENTS—INVENTION—ELECTRIC SIGNS.

> The Chase patent, No. 626,667, for an improvement in electric signs in which letters formed with electric lamps are used, having a base-board on which the letters are mounted with slots therein, through which the connecting wires are passed, and means whereby the letters may be readily and speedily removed and changed, construed, and *held* not anticipated and to disclose invention; also *held* infringed.

In Equity. On final hearing.
See 136 Fed. 699.

Charles N. Butler, for complainant.
John Weaver and Walter C. Pusey, for respondents.

J. B. McPHERSON, District Judge. The complainant is the owner of patent No. 626,667, which was granted on June 13, 1899, to Charles A. Chase, for improvements in electric signs. The difficulties to be remedied, and the means adopted for this purpose by the inventor, sufficiently appear in the following extract from the specification:

"In carrying out my invention I provide a series of letters, each made up in any desired manner of a series of electric lamps connected in circuit; these letters being applied to a suitable baseboard, so as to form a given name or design or advertisement. In many instances the letters or characters upon the signboard are frequently changed, as in advertising plays in theaters and in setting up various advertisements in stores and other places. When such a scheme is contemplated, great difficulty is met in utilizing the same letters by variously placing them upon the same board to produce different names and different advertising matter. When the sign is permanent, this difficulty is not met, for the electrical wires and connections, when once made, remain unchanged.

"One of the objects of my present invention is to provide an electric sign wherein the letters can be easily and quickly changed in position, and arranged to produce different names and designs, and at the same time permit the use of the same material without injuring or mutilating any of the parts. In carrying out my invention I provide a suitable baseboard, which forms the background for the letters, and upon which the letters are mounted in the desired relation to each other. This baseboard is provided with a series of slots or open spaces; said slots or open spaces being preferably inclined, so that no open spaces will be apparent to observers looking at the face of the board. By inclining these slots I am still able to pass the necessary connections therethrough, and at the same time get the appearance of a substantially continuous baseboard. The letters may be of any suitable construction; but I have in the present instance shown them of the construction set out in my prior application, Serial No. 676,849. The several electric lights making up any given letter are connected together by suitable conductors. These conductors preferably pass out at the end of the letter. When the letter is placed in position on the baseboard, these conductors are passed through the proper slot or opening to the back of the board. On the back of the board are provided the main conductors, permanently attached in position and provided with suitable cut-outs, distributed at various intervals. The conductors from each letter, after being passed through the board, are passed along the back of said board and connected to the nearest cut-out, so as to be in circuit with the main conductors. I prefer to provide the conductors with suitable insulators at the point where they pass through the slots in the baseboard.

"It will be seen that by this arrangement I can make up any given advertisement or reading material upon the same sign by changing and disposing the letters in any manner desired, and that this change can be easily and quickly made without disturbing the main electrical connections and without in any manner mutilating or injuring the baseboard or the letters, for all that is necessary is to arrange the letters in a new position, fastening them to the face of the baseboard, and then pass the wires through the nearest slot and connect them to the main circuit. The great utility of this construction in facilitating the reproduction of new signs and new advertising matter will be readily understood by those versed in the art. It is, of course, evident that any suitable electrical connections and systems may be used, and that the number and position of the slots or openings will depend upon the result desired."

Electrical signs such as are contemplated by the patent are used chiefly for advertising theatrical performances, and in this use frequent changes are necessary. It is therefore important that the changes should be inexpensive and easy to make, and that the appearance of the sign should be sightly. The prior art was defective in all these respects. The signs that preceded the invention in suit often required several days to erect, while the cost ran up to more than $100, and the appearance was disfigured by the visible presence of the necessary connecting wires. The sign invented by Chase admits of a change within a comparatively few minutes at a small cost, and covers the wires completely, so that they cannot be seen. The baseboard that hides the wires also furnishes an effective background against which the letters stand out distinctly in the daytime. The characteristic features of the invention are the slotted baseboard, and the easily removable letters that are loosely attached to the board. The main conductors arranged back of the board, and the connections that run from the letters, are necessary parts of all electric signs. The claims involved in this suit are the following:

"(1) An electric sign comprising a baseboard provided with one or more slots, or open spaces, a series of electric lights attached to suitable supports to form letters or characters, said letters or characters attached to the baseboard in proper relation to each other, suitable connections extending from said electric lights through said slots or open spaces to the back of the baseboard and attached to conductors located on said back.

"(2) An electric sign, comprising a baseboard provided with a series of slots or open spaces, a series of letters comprising electric lights arranged to form the contour of the letter, said letters attached to the face of the board to form the desired sign, suitable electrical conductors attached to the back of the board, and suitable connections extending from the said conductors through the slots or open spaces to the letters, substantially as described.

"(3) An electric sign adapted to permit the changing of the advertising matter thereon, comprising a baseboard provided with a series of slots or open spaces, a series of letters made up of electric lights and attached to the face of the board in the desired relation to each other, and electric circuit attached to the back of the board and provided at suitable intervals with devices by means of which the lamps in the letters may be connected in circuit, conductors leading from said letters through the slots to said devices, so as to connect the letters in circuit, the slots arranged to permit the connections to be made when the position of the letters on the board is varied without mutilating the parts."

I do not understand it to be denied that the defendants have either made, or are using, an infringing sign, for the only defense to be found in the record—no brief having been filed on behalf of the defendants—is the invalidity of the patent in view of the prior art. Special reliance is placed upon a sign that was displayed in front of the Auditorium Theatre in Philadelphia for several years before the complainant's patent was applied for, and almost all of the defendants' evidence is directed to this structure. I do not think it necessary to discuss the testimony in detail. It has all been considered, but it has not led me to the conclusion that the device relied upon was an anticipation. On the contrary, it seems to me to have lacked the essential features of the patented sign, for the letters were tightly fastened in place, so that they could only be changed with difficulty, instead of being loosely hung so that they could be lifted singly as soon as the wires were disconnected, and there was no baseboard or slot. The sign was always unsatisfactory and was abandoned several years ago, in favor of a structure, which, like the sign at the Walnut Street Theatre that is the subject of the present suit, is also, apparently, an infringement of the complainant's patent. The earlier patents to Page, Page & McAllister, Scott & Shonnard, Norden, and Toomey, respectively, lack one or more of the characteristic elements of the complainant's combinations, and cannot, I think, be held to anticipate the invention.

The usual decree may be entered upon the first three claims of the patent, with costs.